UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

COPPERHEAD INDUSTRIAL INC. and JEC DISTRIBUTORS INC.,

    Plaintiffs,

v.

G.E. SCHMIDT, INC. and KYOKUTOK CO., LTD.,

    Defendants.

Case No. 1:17-cv-609

Dlott, J.
Bowman, M.J

## REPORT AND RECOMMENDATIONS

This civil action is before the Court on the Motions to Dismiss for Lack of Subject-Matter Jurisdiction filed by Defendant G.E. Schmidt, Inc. (Doc. 7) and Defendant Kyokutoh Co., Ltd. (Doc. 15) and the parties' responsive memoranda (Docs. 14, 21, 22), including Plaintiffs' Notice of Supplemental Authority (Doc. 25) and the briefs that followed (Docs. 28, 29). Upon careful review, the undersigned finds that Defendants' Motions[1] are not well-taken.

### I. OVERVIEW

Plaintiff Copperhead Industrial Inc. ("Copperhead") is a Canadian corporation with its principal place of business at 1416 Rebecca Street, Oakville, Ontario, Canada. (Doc. 1 at PageID 1 (¶ 1).) Copperhead alleges that it owns U.S. Patent Numbers 8,742,281; 9,168,609; 9,393,639; and 9,757,814 (collectively, the "patents-in-suit"). (Id. at PageID 4 (¶¶ 14–18).) Specifically, Copperhead alleges that it is the "owner of the

---

[1] The Motions filed by Defendants are substantively identical and will be discussed as one.

1

entire right, title, and interest in and to each of the patents-in-suit with the right to sue for past, present, and future infringement." (*Id.* (¶ 18).) Plaintiff JEC Distributors Inc. ("JEC") also is a Canadian corporation with its principal place of business at the same address. (*Id.* at PageID 1 (¶ 2).) JEC claims to be a nonexclusive licensee of each of the patents-in-suit. (*Id.* at PageID 4 (¶ 19).) Plaintiffs accuse Defendants G.E. Schmidt, Inc. and Kyokutoh Co., Ltd. of patent infringement in violation of 35 U.S.C. § 271. (*Id.* at PageID 4–14 (¶¶ 20–74).)

Defendants move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). They assert that Plaintiffs lack Article III standing because they do not have any rights or interests in the patents-in-suit and therefore cannot suffer the requisite injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). Moreover, because neither Plaintiff is the inventor, the successor-in-interest to the inventor, or an exclusive licensee with all substantial rights in the patents-in-suit, they are not patentees with standing to sue under 35 U.S.C. § 281. Plaintiffs respond that Copperhead does have standing, and submit the Declaration of Giuseppe (Joseph) Ruggiero—and its attached exhibits—in support. Plaintiffs also submit as supplemental authority a favorable judgment recently issued by a Canadian federal court relating to ownership of Canadian patents that are counterparts to the patents-in-suit.

## II. STANDARD OF LAW

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. There are two types of challenges pursuant to Rule 12(b)(1), facial and factual. A facial attack "goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction," and in this instance, the court

"takes the allegations of the complaint as true for purposes of [its] analysis." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A factual attack, on the other hand, "challenges the factual existence of subject matter jurisdiction." *Id.* Here, "a court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case. *Id.* at 759–60. In the pending Motions, Defendants challenge the *factual* existence of this Court's subject matter jurisdiction over Plaintiffs' claims. Thus, the undersigned properly may consider evidence outside the pleadings, mindful that Plaintiffs bear the burden of proving that subject matter jurisdiction exists. *Id.* at 760 (citing *DLX, Inc. v. Commonwealth of Ky.*, 381 F.3d 511, 516 (6th Cir. 2004).)

## III. BACKGROUND

### A. The Patent Purchase Agreement, and the Original and Corrective Assignments

Copperhead is a corporation provincially incorporated under the laws of Ontario, Canada, and is in the business of distributing automotive manufacturing industry products, including spot welding cap changers that are the subject of the patents-in-suit. (Ruggiero Decl., Doc. 14-1 at PageID 309 (¶¶ 2, 3).) According to Plaintiffs, all Ontario provincial corporations are assigned a corporation number that is unique to that corporation, cannot be transferred to another corporation, and cannot be changed.[2] Copperhead's Ontario corporation number is "2152706." (*Id.* at PageID 311 (¶ 12(b));

---

[2] *See* Ontario.ca (official website of the Ontario Government) at https://www.ontario.ca/page/incorporating-business-corporation Ontario corporation number (OCN): "Upon incorporation, the [Central Production and Verification Services] Branch assigns every corporation a number, which is unique to that corporation (last visited May 25, 2018). It cannot be transferred to another corporation, nor can a corporation ever change its corporation number. When corporations amalgamate, the amalgamated corporation is assigned a new number."

Corporation Profile Report, Province of Ontario Ministry of Government Services, Doc. 14-4 at PageID 322–29.)

Giuseppe (Joseph) Ruggiero is the sole owner, sole director, and president of Copperhead. (Doc. 14-1 at PageID 308 (¶ 1).) Between November 2012 and February 2013, Ruggiero engaged in discussions with Werner Kaeseler, the inventor named in the patents-in-suit, regarding Copperhead's purchase of Kaeseler's intellectual property rights. (*Id.* at PageID 309 (¶ 4).) These negotiations concluded when Ruggiero and Kaeseler finalized the terms for purchase of Kaeseler's issued patent in the United States relating to spot welding cap changers, as well as pending patent applications in the United States and Canada (collectively, the "Patent and Patent Applications"). (*Id.* at PageID 309–10 (¶¶ 5, 6).) The terms were reduced to writing in the "Patent Purchase Agreement" signed by both Kaeseler and Ruggiero on February 16, 2013. (*Id.* at PageID 310 (¶¶ 7, 8).) Kaeseler was listed as "Vendor" and "002152706 Ontario Ltd."—with an address of "1416 Rebecca Street, Oakville, Ontario, Canada"—was listed as "Purchaser." (Doc. 14-2 at PageID 315.) On the same date and in connection with the Patent Purchase Agreement, Kaeseler assigned his rights as "inventor and sole owner of the patent and patent applications" to "002152706 Ontario Ltd." (*Id.* at PageID 310 (¶ 8); Doc. 14-3.) As with the Patent Purchase Agreement, the address listed for 002152706 Ontario Ltd. is "1416 Rebecca Street, Oakville, Ontario, Canada." (Doc. 14-3 at PageID 319.) Both Kaeseler and Ruggiero signed this document also. (Doc. 14-1 at PageID 310 (¶ 8); Doc. 14-3 at PageID 320.) These assignments were later filed with the United States Patent and Trademark Office ("USPTO"). (Dolive Decl., Doc. 7-1 at

PageID 172–73 (¶¶ 3–7); Docs. 7-2, 7-3, 7-4, 7-5 (collectively, the "original" assignment).)

On December 14, 2016, Copperhead filed four "corrective" assignments with the USPTO, which were identical to the original assignments except that the name "002152706 Ontario Ltd." was crossed out by hand and replaced with "Copperhead Industrial Inc." (Dolive Decl., Doc. 7-1 at PageID 172–74 (¶¶ 3, 8–11); Doc. 7-6 at PageID 202–03, Doc. 7-7 at PageID 225–26, Doc. 7-8 at PageID 245–46, Doc. 7-9 at PageID 267–68) (collectively, the "corrective" assignment).) Ruggiero initialed and dated each change on behalf of Copperhead. Ruggiero included a declaration in support of each corrective assignment. (Doc. 7-6 at PageID 205–06, Doc. 7-7 at PageID 228–29, Doc. 7-8 at PageID 248–49, Doc. 7-9 at PageID 270–71.) In it, he asserted that he is Copperhead's sole owner and sole director, as well as its president. (*See, e.g.*, Doc. 7-6 at PageID 205 (¶ 1).) He further asserted that it was an "inadvertent mistake" to identify Copperhead by its "Ontario corporation number (2152706)" rather than by its corporate name, Copperhead Industrial Inc., in the original assignment. (*Id.* (¶ 2).) Ruggiero explained that, when he executed the original assignment, he "mistakenly believed that 002152706 Ontario Ltd. was the legal corporate name for Copperhead, and that Copperhead was 'doing business as' Copperhead. I now know and understand that 2152706 is, in fact, merely Copperhead's Ontario corporation number, rather than its legal corporate name, 'Copperhead Industrial Inc.'" (*Id.* (¶ 3).) Ruggiero stated that "inclusion of '002152706 Ontario Ltd.' as a party to the [original a]ssignment was due to an error that did not accurately reflect my, Copperhead's, or Mr. Kaeseler's intentions. The [original a]ssignment was always

5

intended to be between Mr. Kaeseler and Copperhead." (*Id.* at PageID 206 (¶ 4).) Regarding Kaeseler, Ruggiero understood him to be "suffering from a chronic illness in Germany and may not be available to correct the [original a]ssignment or execute a new assignment." (*Id.* (¶ 5).)

### B. Ruggiero Declaration Filed in this Civil Action

Ruggiero's declaration filed in support of Copperhead's memorandum in opposition in this civil action largely reprises his declaration included in support of the corrective assignment filed with the USPTO. He states again that it was an "inadvertent mistake" to identify Copperhead by its "Ontario corporation number (2152706)" rather than by its corporate name—Copperhead Industrial Inc.—in the original assignment. (Doc. 14-1 at PageID 310 (¶ 9).) He also reiterates his "mistaken belief" that "002152706 Ontario Ltd." was the "legal corporate name" for Copperhead, and his now corrected understanding "that 2152706 is, in fact, merely Copperhead's Ontario corporation number, rather than its legal corporate name, '*Copperhead Industrial Inc.*'" (*Id.* at PageID 311 (¶¶ 10, 11, 12).) To further corroborate his "mistaken belief" that "002152706 Ontario Ltd." was the "legal corporate name" for Copperhead, Ruggiero attaches a "Sales Agreement" on Copperhead stationery dated April 30, 2011. (Doc. 14-5.) That agreement reads as follows:

> Glen Keleher agrees to transfer ownership of his 50% share of 002152706 Ontario Limited, operating as Copperhead Industrial Inc., to Joseph Ruggiero for the amount of (REDACTED)[.]
>
> The funds will be paid out of the Canadian bank account of Copperhead Industrial Inc. to Glen Keleher by either certified cheque or money order.

6

> Once funds have been received by Glen Keleher, he withdraws all legal rights and holds no responsibilities to Copperhead Industrial Inc.

(*Id.*)

Ruggiero devotes several paragraphs in his declaration to what he describes as the "common intention" of the parties to the Patent Purchase Agreement. (*Id.* at PageID 312–13 (¶¶ 14–19).) He states that he intended "for Copperhead to be a party to the Patent Purchase Agreement and for Copperhead to be the assignee in respect of the Patent and Patent Applications that were assigned under the agreement[,]" and, based on his discussions with Kaeseler "at the time we entered into the Patent Purchase Agreement," he believes Kaeseler "intended to contract with, and transfer the Patent and Patent Applications to, Copperhead." (*Id.* at PageID 312 (¶¶ 14, 15).) To this end, Ruggiero notes that Copperhead "made all required payments to Mr. Kaeseler due under the Patent Purchase Agreement, including the first payment made on February 20, 2013 and the second, final payment made on or around May 23, 2013." (*Id.* (¶ 16).) As proof he attaches a receipt dated February 20, 2013 confirming a $15,000.00 transfer from the Royal Bank of Canada—ordering customer Copperhead Industrial Inc.—to REU Schweibtechnik GmbH, which Ruggiero identifies as "Mr. Kaeseler's company." (*Id.* (¶ 17) & Doc. 14-6.) He also attaches Copperhead's Royal Bank of Canada monthly statement for the period May 6, 2013 to June 6, 2013 that lists a $10,578.00 transfer to "REU Schweibtech" on "23 May." (Doc. 14-1 at PageID 312–13 (¶ 18) & Doc. 14-7.) These amounts and payment dates correspond to the payment terms set forth in the Patent Purchase Agreement. (Doc. 14-2 at PageID 316.)

Regarding the corrective assignment, Ruggiero explains that he "was unable to communicate with or secure a declaration from Mr. Kaeseler" because Kaeseler was "gravely ill between at least December 2016 and the date of his death," which was September 15, 2017. (Doc. 14-1 at PageID 313 (¶ 20).)

### C. Canadian Federal Court Judgment Issued March 19, 2018

On March 19, 2018, a Canadian federal court issued a judgment granting Copperhead's application to list "Copperhead Industrial Inc."—instead of "002152706 Ontario Ltd." or "002152706 Ontario Limited"—as owner of two Canadian patents (533 patent and 266 patent) that are counterparts of the patents-in-suit. (*See* Doc. 25-1.) The application arose within the context of separate actions filed in the Canadian federal court alleging that the intervener in the application, Changer & Dresser Inc.,[3] had infringed both patents. (*Id.* at PageID 474 (¶ 11).) The Canadian Patents Database originally reflected "002152706 Ontario Ltd." as owner of the 533 patent, which was expressly assigned to it by inventor Werner Kaeseler under a February 16, 2013 Patent Purchase Agreement, the very same Agreement at issue here in the Southern District of Ohio. (*See id.* (¶ 9).) Patent 266 is a divisional of patent 533, and the Canadian Patents Database likewise reflected "002152706 Ontario Limited" as owner of the 266 patent. (*Id.* (¶ 10).) The intervenor and accused patent infringer asserted that "002152706 Ontario Ltd." was not a legal corporate entity, and "thus all intellectual property rights in the patents remain[ed] with Mr. Kaeseler." (*Id.* (¶ 11).)

---

[3] Changer & Dresser, Inc.—an Alabama corporation that is a partially-owned subsidiary of co-Defendant Kyukotoh Co., Ltd.—is a party to litigation regarding the patents-in-suit in the Western District of New York (*002152706 Ontario Limited, et al. v. Changer & Dresser, Inc.*, Case No. 1:15-cv-00020-WMS-LGF) ("the New York litigation") and in the Northern District of Alabama (*Changer & Dresser, Inc. v. Joe Ruggiero, et al.*, Case No. 1:16-cv-01924-VEH). (Doc. 7 at PageID 163 n.5; Doc. 15 at PageID 415 n.5.)

8

As explained by the presiding Canadian judge, once a patent is issued in Canada, the Commissioner of Patents "has no discretion to amend or address their errors." (*Id.* ¶ 16).) Rather, by statute, jurisdiction to vary or expunge the title to a patent lies with the federal court. (*Id.*) The Canadian federal court noted it would be "without jurisdiction" under the statute if the proceedings were to require it "to determine proper ownership of a patent through the application and interpretation of contract law principles." (*Id.* at PageID 477 (¶ 19).) But the existence of a related dispute or contested application does not undermine jurisdiction so long as the court "is satisfied the issues relate primarily to patent law and parties having a potential interest have had notice." (*Id.*) Satisfied that there was "no question of contested ownership" or that the questions presented did not "involve an interpretation of the assignment agreement," the court determined it had jurisdiction and characterized the issue to be whether there was "sufficient evidence to conclude that as the result of mistake or inadvertence the owner of the 533 and 266 patents has not been correctly identified in the Patent Office records." (*Id.* at PageID 478 (¶ 21).)

The intervenor and accused patent infringer submitted that "non-hearsay evidence from relevant inventors and assignors" was required, and noted that the only evidence in favor of the application was from Ruggiero, Copperhead's sole director. (*Id.* (¶ 22).) Kaeseler, the inventor and assignor of the patent, did not provide evidence with respect to the application, although his affidavit was requested. (*Id.* at PageID 475 (¶ 12).) Ruggiero reported initially that Kaeseler was unable to swear an affidavit because he was "quite ill." (*Id.*) Then, to a second affidavit Ruggiero attached correspondence from Kaeseler's legal counsel who advised that Kaeseler was

9

"seriously ill and on a ventilator." (*Id.*) Finally, before judgment was rendered, Kaeseler's death certificate was filed with the Canadian federal court, confirming that he died on September 15, 2017. (*Id.*) Although acknowledging that "affidavit evidence from all interested parties is commonly provided," the court refused to set this absolute as an evidentiary standard and concluded that affidavit evidence would not be required from all inventors and assignors in the proceeding at bar. (*Id.* at PageID 479 (¶¶ 23–26).)

Regarding Ruggiero's evidence, the court observed that the applicant's "Corporation Profile Report produced by Ontario's Ministry of Government Services clearly establishes the link between the corporate number and Copperhead." (*Id.* at PageID 480 (¶ 28).) The court acknowledged evidence of other contractual documentation provided by Ruggiero "where Copperhead has been described by its corporation number and not its legal name due to his misunderstanding." (*Id.*) His misunderstanding is identical to the one alleged now in the Southern District of Ohio, namely "that until December 2016 [Ruggiero] mistakenly believed that the applicant's legal corporate name was 002152706 Ontario Ltd., and that Copperhead was the applicant's trade name." (*Id.* at PageID 474 (¶ 8).) Evidence of payment from Copperhead to REU Schweibtechnik GmbH "in amounts that accord with the terms of the purchase agreement" corroborates Ruggiero's evidence "in respect of his misunderstanding and that the patents in issue were assigned to Copperhead." (*Id.* at PageID 480 (¶ 29).) Given all this evidence, evidence of intent, "such as that provided by Mr. Ruggiero or sought from Mr. Kaeselar," was not required. (*Id.* at PageID 481 (¶ 31).) The court then rendered its judgment that the "mistaken" entry in the records of

the Canadian Patent Office regarding the 533 patent and the 266 patent be varied to show Copperhead as owner. (*Id.* (¶ 33); *see id.* at PageID 484.)

## IV. ANALYSIS

### A. Synopsis of the Parties' Arguments

"The irreducible constitutional minimum of standing" consists of three elements: an "injury in fact," a "causal connection" between the injury and the conduct complained of, and a likelihood that the injury will be "redressed by a favorable decision." *Lujan*, *supra*, 504 U.S. at 560–61. Defendants maintain that Copperhead and JEC cannot establish the first *Lujan* element, an "injury in fact." (Doc. 7 at PageID 164–66.) The original assignment of the patents-in-suit was from the inventor, Werner Kaeseler, to "002152706 Ontario Ltd.," and *not* to Copperhead Industrial Inc. (*See id.* at PageID 161–62.) "002152706" is the Ontario corporation number ("OCN") assigned to Copperhead, but "002152706 Ontario Ltd." is not otherwise "a legally-existing entity." (*Id.* at PageID 162, 165.) Thus, according to Defendants, Kaeseler's original assignment to 002152706 Ontario Ltd. was then, and remains, a legal nullity. (*Id.* at PageID 165 (citing *In re Devore*, No. 09-3372, 2011 WL 2580117, at *3 (Bankr. N.D. Ohio June 27, 2011) ("The transfer of property to a non-existent grantee 'is a mere nullity.'")).) The corrective assignment—in which the name "002152706 Ontario Ltd." is crossed out by hand and replaced with "Copperhead Industrial Inc."—also is a legal nullity, because *only* the representative of Copperhead initialed and dated the changes. (*Id.* at PageID 162–63, 166–67.) The other party to the original assignment, Kaeseler, did not. (*Id.* at PageID 162, 166.) Without evidence of mutual assent for the modification, it is unenforceable. *See Expeditors Int'l of Wash., Inc. v. Crowley Amer.*

11

*Transp., Inc.*, 117 F. Supp. 2d 663, 668 (S.D. Ohio 2000) ("The general rule is that a modification of a contract requires the same elements of mutual assent and consideration that are necessary for the formation of contracts.") (quotation and citation omitted). And the mere formality of filing the corrective assignment with the USPTO does not render it legally effective. *See* 37 C.F.R. § 3.54 ("The recording of a document pursuant to § 3.11 is not a determination by the Office of the validity of the document or the effect that document has on the title to an application, a patent, or a registration."); *see generally In re CTP Innovations, LLC*, MDL No. 14-MD-2581, 2016 WL 6996738, at *3–5 (D. Md. Nov. 30, 2016) (finding assignments recorded at the USPTO unenforceable because the assignor had no rights in the patents to assign and "one cannot give what one does not have.") Regarding JEC, a nonexclusive licensee, its rights to the patents-in-suit are contingent upon Copperhead's rights to the patents-in-suit. Thus, if the assignment to Copperhead was ineffective, the license from Copperhead to JEC is similarly ineffective, such that JEC has no rights to the patents-in-suit. (Doc. 7 at PageID 165 n.7.)

Defendants contend the Plaintiffs fail to establish statutory standing, too. (*Id.* at PageID 168.) Under 35 U.S.C. § 281, only a "patentee" may bring a civil action for infringement of a patent. "Patentees" include "not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* § 100(d). An "exclusive licensee also has standing to sue in its own name, without joining the patent holder where 'all substantial rights' in the patent are transferred." *Alps South, LLC v. Ohio Willow Wood Co.*, 787 F.3d 1379, 1382 (Fed. Cir. 2015) (quotation and citation omitted). Neither Plaintiff is a named inventor. Copperhead is not a successor in title to the

inventor because the corrective assignment is unenforceable. And even presuming any license granted to JEC was effective, the Complaint describes JEC as a *non*exclusive licensee, precluding it, under Federal Circuit case law, from having standing to file suit on its own.

Plaintiffs portray the corrective assignment as a much more basic event. It was, simply, a correction of "an obvious technical error" in the original assignment by listing "002152706 Ontario Ltd." as assignee rather than "Copperhead Industrial Inc." (Doc. 14 at PageID 299.) Relying on the Ruggiero declaration for factual support, Plaintiffs insist that it was an "inadvertent mistake" to identify Copperhead by its OCN in both the Patent Purchase Agreement and in the Patent Assignment rather than by its corporate name. (*Id.* at PageID 300 (citing Doc. 14-1 at PageID 310 (¶¶ 8, 9).) When Ruggiero recognized his mistake, Kaeseler, the assignor, was not available because of illness and later died. (*Id.* at PageID 302 (citing Doc. 14-1 at PageID 313 (¶ 20).) Hence, Copperhead rectified the error in accord with the appropriate USPTO procedure set forth Section 323.01(b) of the Manual of Patent Examining Procedure, "Typographical Errors in Recorded Assignment Document" (permitting errors in assignment documents to be corrected "[i]f an assignor is not available to correct an original document or execute a new one" through an assignee "affidavit or declaration in which the assignee identifies the error and requests correction"). (*Id.* at PageID 302.) To allow Defendants to escape liability for patent infringement based on "technical error" would be inequitable in Plaintiffs' view. They consequently urge the Court to reject the notion that they lack standing to bring this civil action. *See Hilgraeve Corp. v. Symantec Corp.*, 212 F.R.D. 345, 348 (E.D. Mich. 2003).

## B. The Court Will Take Notice of the Canadian Judgment

The March 19, 2018 Canadian federal court judgment regarding the Canadian patents that are counterparts of the patents-in-suit is a public record of which the undersigned may—and does—take judicial notice. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980); *see also Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002). The Canadian Judgment does not bind this Court, but, where helpful, may inform its reasoning.

## C. Plaintiff Copperhead Has Established Standing

The undersigned concludes that Copperhead has established standing pursuant to Article III and 35 U.S.C. § 281, *see Alps South*, 787 F.3d at 1382, thus allowing the Court to exercise jurisdiction over its claims of patent infringement against Defendants. To this end, the undersigned finds that <u>Copperhead Industrial Inc. was always the intended party to the February 16, 2013 Patent Purchase Agreement and the intended assignee of the Patent Assignment executed in connection therewith</u>. The undersigned finds further that <u>the corrective assignment filed on December 14, 2016 corrects the inadvertent mistake of identifying Copperhead by its Ontario corporation number rather than by its corporate name</u>.

Defendants offer no real challenge to Ruggiero's testimony about his mistaken belief that "002152706 Ontario Ltd." was Copperhead's legal corporate name, which is why 002152706 Ontario Ltd. was listed as the purchaser of Kaeseler's intellectual property rights. Ruggiero was under the same mistaken belief in 2011—nearly two years prior—when he acquired 100% ownership of Copperhead. (Doc. 14-5 at PageID

14

330 ("Glen Keleher agrees to transfer ownership of his 50% share of **002152706 Ontario Limited, operating as Copperhead Industrial Inc.**, to Joseph Ruggiero . . . .") (emphasis added).) A Corporation Profile Report for Copperhead (dated December 1, 2016) obtained by Ruggiero from the Ontario Ministry of Government Services confirms that Copperhead's OCN is "2152706" and that its registered business address is identical to the one listed for "002152706 Ontario Ltd." in the Patent Purchase Agreement and the Patent Assignment. (*Cf.* Doc. 14-4 at PageID 322, 325 *with* Doc. 14-2 at PageID 315 and Doc. 14-3 at PageID 319.) As noted in the Canadian Judgment, this report serves to establish a "clear[ ] link between the corporate number and Copperhead[.]" (Doc. 25-1 at PageID 480 (¶ 28).) That link is reinforced by evidence of payments from Copperhead to Kaeseler as specified in the Patent Purchase Agreement. (*See* Docs. 14-6, 14-7.)

Defendants downplay the "significance" of corporation numbers in Ontario, and Plaintiffs citation to the official website of the Ontario Government in support. (Doc. 22 at PageID 444 n.7.) But the Canadian Judgment confirms the premise that Copperhead is uniquely 2152706 and vice versa. Some party must possess the substantive right to sue for patent infringement, and, in this particular and unusual circumstance—owing to the exclusivity of the OCN—that party is Copperhead. *See Hilgraeve*, 212 F.R.D. at 348.

A number of cases are instructive. For example, summary judgment based on a lack of standing was denied in *LP Matthews LLC v. Bath & Body Works, Inc.*, where the patent assignment to the plaintiff was executed by Greenspan **Company**, an entity that did not exist, instead of Greenspan **Corporation**. 458 F. Supp. 2d 211, 213 (D. Del.

15

2006). The court found persuasive the fact that the original assignee, who was not an attorney, "did not understand the distinctions between the designations 'Company' and 'Corporation'" and used them "interchangeably." *Id.* at 215. Other examples that did not defeat standing include *Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693-UU, 2016 WL 6678525, at *3 (S.D. Fla. June 8, 2016) (assignment made to "**V**ERTEX Closed Joint Stock Company" instead of "**W**ERTEKS Closed Joint Stock Company" because of a transliteration/transcription issue of "w" pronounced as "v"); *Shower Enclosures Am., Inc. v. BBC Distrib. Corp.*, No. 3:15cv627, 2016 WL 3031081, at *1–2 (N.D. Ind. May 27, 2016) ("inadvertent error" explained assignment made to "Shower Enclosures, Inc." instead of "Shower Enclosures **America**, Inc."); *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 2995997, at *4 (E.D. Tex. June 4, 2012) (typographical error explained assignment to "ESS Technolog**ies** International, Inc."—an entity that did not exist—instead of "ESS Technolog**y** International, Inc.").

*Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359 (Fed. Cir. 2010), relied upon by Defendants, is distinguishable. In *Abraxis*, two related corporate entities owned the asserted pharmaceutical patents, and they intended to convey them to a third related entity, which, in turn, would assign them to the plaintiff. *See id.* at 1360–61. But at the time the third related entity purported to assign the patents to the plaintiff, the two owners of the patents had not transferred them to the third entity, breaking the chain of title. *Id.* at 1361. The issue presented related to "[w]hether an assignment of patent rights in an agreement is automatic or merely a promise to assign" and the Federal Circuit held that "contracts that obligate the owner to grant rights in the future do not vest legal title to the patents in the assignee. *Id.* at 1364–65. The actual transfer

of the asserted patents was to occur *in the future*, and thus the transferor had no rights to assign to the plaintiff. *Id.* at 1365. Despite the "intent" of the various related entities, "[c]ommon corporate structure does not overcome the requirement that even between a parent and a subsidiary, an appropriate written assignment is necessary to transfer legal title from one to the other." *Id.* at 1366.

The present case is exponentially less complex. There is no suggestion that Kaeseler as transferor lacked any rights in the patents-in-suit, or that the assignment was not automatic. And Plaintiffs have offered more than sufficient evidence that the parties intended that Kaeseler's patent rights be transferred to Ruggiero's company, Copperhead, which paid Kaeseler for them. That Copperhead was identified by its corporate number rather than by its corporate name falls within the ambit of mistake, made "obvious" by the clear link the Province of Ontario established between them.

Finally, Defendants bring to the Court's attention a second assignment made by Kaeseler of his U.S. patent relating to spot welding cap changers. (Doc. 22 at PageID 442–44.) This one, to Joe Ruggiero individually, was made on March 8, 2013 and filed with the USPTO on May 28, 2013, in contrast to the original assignment that was executed on February 16, 2013 but not recorded until November 25, 2013. (Doc. 22-1 at PageID 453–54 (¶¶ 4, 5), Doc. 22-2.) In Defendants' view, "Kaeseler's execution of this other assignment refutes Plaintiffs' argument in this Court that the now-deceased Mr. Kaeseler somehow always intended to assign the U.S. patents to Plaintiff Copperhead Industrial[] Inc. (Doc. 28 at PageID 489.) Not necessarily so. The assignment was to Copperhead's sole owner, sole director, and president as opposed to someone with no connection to Copperhead. Nonetheless, a cursory examination

indicates that the Ruggiero assignment would be declared invalid, because Kaeseler—despite his blanket covenant to the contrary[4]—already had assigned his intellectual property rights to Copperhead some three weeks earlier and had received the first of two payments therefor. Indeed, Defendants expressly state in their reply papers that they "are not conceding that the purported assignment to Mr. Ruggiero is valid, and they reserve all rights to contest [its] validity." (Doc. 22 at PageID 443 n.5.) An apparent red herring, the Ruggiero assignment does not dictate a different result.[5]

## V. CONCLUSION

Consistent with the foregoing analysis, **IT IS RECOMMENDED THAT** on the Motions to Dismiss for Lack of Subject-Matter Jurisdiction filed by Defendant G.E. Schmidt, Inc. (Doc. 7) and Defendant Kyokutoh Co., Ltd. (Doc. 15) be **DENIED**.[6]

---

[4] Among the recitals in the document signed by Kaeseler was his covenant "that **no assignment**, **sale**, agreement or encumbrance **has been** or will be **made** or entered into **which would conflict with this assignment**." (Doc. 22-2 at PageID 458 (emphasis added).)

[5] Nor does the fact that "002152706 Ontario Limited" is a plaintiff in the parallel New York litigation. Review of the docket sheet in that civil action indicates that the original complaint was filed on January 6, 2015 (Doc. 1), with amended complaints being filed on February 10, 2015 (Doc. 5), April 17, 2015 (Doc. 12), December 7, 2015 (Doc. 28), November 1, 2016 (Doc. 54), and November 27, 2017 (Doc. 101). *See 002152706 Ontario Limited, et al. v. Changer & Dresser, Inc.*, Case No. 1:15-cv-00020-WMS-LGF The original complaint and the first four amended complaints were filed prior to December 14, 2016, the date on which the corrective assignment was filed with the USPTO. The fifth amended complaint clearly was filed after December 14, 2016. However, approximately six weeks later, on January 5, 2018, Plaintiffs filed a motion to substitute "Copperhead Industrial Inc." as plaintiff for "002152706 Ontario Limited" pursuant to Fed. R. Civ. P. 17(a) on the basis that Copperhead is the real party in interest. (Docs. 103, 105 (at pages 12–15), and 110.) That motion is currently pending before the court in the Western District of New York.

[6] The parties' briefs focus principally on whether *Copperhead* has standing to sue for patent infringement, which this Report recommends resolve in Copperhead's favor. The issue of JEC's standing, however, is a discrete question. Defendants are correct in their general observation that "if the assignment to Copperhead was ineffective, the purported license to JEC is also ineffective, such that JEC has no rights to the patents-in-suit." (Doc. 7 at PageID 165 n.7.) But whether JEC *also* has standing has not been fully addressed. In their reply, Defendants comment, almost as an afterthought, that as a *non*exclusive licensee, JEC "lacks standing to participate at all in this case." (Doc. 22 at PageID 447 n.11 (citing *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341 (Fed. Cir. 2007) ("A nonexclusive license confers no constitutional standing on the licensee to bring suit **or even to join a suit with the patentee** because a nonexclusive licensee suffers no legal injury from infringement.") (emphasis added by Defendants) (quoting *Sicom Systems, Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005).) However, the undersigned is reluctant to make a recommendation on a matter of jurisdiction based solely upon a footnote in a pleading to which Plaintiffs were not entitled to respond. Should the presiding district

19

          *s/Stephanie K. Bowman*
          Stephanie K. Bowman
          United States Magistrate Judge

---

judge adopt the undersigned's recommendation regarding the fact of Copperhead's standing, the parties may wish to revisit the question of JEC's standing at a later point in this litigation.

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| COPPERHEAD INDUSTRIAL INC. and JEC DISTRIBUTORS INC., | Case No. 1:17-cv-609 |
| Plaintiffs, | Dlott, J.<br>Bowman, M.J. |
| v. | |
| G.E. SCHMIDT, INC. and KYOKUTOK CO., LTD., | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendations ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).